IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MAURICE BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  18 cv 1469 |
| | ) | |
| VILLAGE OF MARKHAM, | ) | |
| | ) | |
| Defendant. | ) | |

**VERIFIED COMPLAINT AT LAW**

Now comes the Plaintiff, Maurice Brown, an individual, by his attorneys, Law Offices of Tracy E. Stevenson, P.C., by Tracy E. Stevenson and Lisa L. Clay, Attorney at Law and for his Verified Complaint at Law, states as follows:

**JURISDICTION AND VENUE**

1. This court has jurisdiction pursuant to the Americans with Disabilities Act ("ADA" and sometimes referred to herein as the "Act") 42 U.S.C.A § 12101, *et seq*. Venue is proper pursuant to the Act and all parties are residents of the Northern District of Illinois.

**PARTIES**

2. The Plaintiff, Maurice Brown, (hereafter "Brown") is a citizen of the United States and resides in Cook County, Illinois.

3. The Defendant, the Village of Markham, (hereafter "the "Village" or "Markham") is a municipal corporation doing business in Markham, Illinois.

1

**COMMON FACTS**

4. On and about April 4, 2007, Brown became an employee of the Village of Markham working in the Markham Police Department as a police officer, and remained employed by the Defendant until June 26, 2017.

5. At all relevant times since 2007, Brown worked as a full time employee as a Village Police Officer/patrolman. His primary duties included protecting the health and safety of the residents, responding to calls for assistance, lending police assistance as needed and otherwise carrying out his duties as a patrolman in accordance with his training and at the direction of Markham.

6. On October 30, 2015, while on duty, Brown responded to a call for assistance at a Markham establishment. Upon arrival, Brown found a suspect accused of attempting to bring a weapon into a night club.

7. Brown investigated the incident, took the suspect into temporary custody at the scene and further investigated the incident. Ultimately, Brown released the suspect after inspecting the weapon, the suspect's identification and a FOID card establishing legal ownership of the suspect's weapon.

8. Months passed without anyone suggesting that Brown's handling of the incident had been improper or insufficient.

9. On January 15, 2016, the Village issued Brown a notice of disciplinary hearing (hereafter "January 2016 Notice") related to the October incident.

10. On February 1, 2016, Brown met with Defendants and reviewed the charges contained within the January 2016 Notice. The charges of misconduct related solely to his practices in the field and did not reference any injury to Brown, mental or physical. Brown

never claimed, and the Village never suggested, that any illness or injury contributed to his decision making process related to the October incident.

11. On February 5, 2016, Brown entered into an agreement whereby he accepted responsibility for the charges against him and agreed to accept a 40-day unpaid suspension from his job in lieu of an extended hearing process.

12. Notwithstanding the lack of any notice of mental or physical illness or injury related the October incident, nor any intervening illness or injury affecting Brown's ability to perform the primary functions of his job, the Village also demanded that Brown undergo mental and physical evaluation before he would be permitted to return to work after his suspension.

13. Brown was not provided any option as to the above demands. Rather, he was advised that he could accept the proposed terms or be subject to termination proceedings.

14. Brown completed the term of his suspension, but had still not been provided information necessary to set up the mandatory fitness for duty evaluation.

15. Brown was not permitted to select his own physician to comply with the requirement and was not told why a fitness for duty evaluation was required when no illness or injury had been associated with the disciplinary action.

16. Over the course of approximately one year, Brown was forced to undergo two mental fitness for duty examinations and a course of mental counseling therapy at Markham's insistence. At no time was there any suggestion of a disability nor any medical illness or injury, mental or otherwise, nor did Brown notify the Village of a disability which would affect his ability to perform the regular functions of his job.

17. In July of 2016 the counselor and therapist that Brown was directed to see after his first fitness for duty exam confirmed that Brown was fit for duty, but the counselor's

recommendation was deemed insufficient by the Village for unstated reasons. Rather, Brown was advised, again without explanation, that he would need to undergo a second fitness for duty evaluation.

18. Brown waited months for the Village to provide him the name of the second required provider. Upon demand for the medical records which the Village asserted deemed Brown to be "unfit for duty", the Village refused to tender same nor to explain the nature of the perceived disability which prohibited Brown from returning to work.

19. The Village advised Brown of the name of the required provider on January 5, 2107, as part of a notice of termination hearing (the "January 2017 Notice"). At the time of the notice of termination hearing, Brown was still not advised of the medical or mental illness or injury which prevented him from returning to work.

20. Brown promptly attempted to obtain an appointment with one of the two proposed providers and took the first available appointment.

21. Brown met with Village agents after his second fitness for duty exam and was again advised that he had been found not fit for duty, but was provided no diagnosis or explanation for the finding.

22. At no time during this entire process was Brown ever provided a basis for the requested fitness for duty evaluations, nor did either of the doctors provide a diagnosis to support their purported opinion that he was unfit for duty.

23. Indeed, upon repeatedly demand for the medical records which the Village asserted deemed Brown to be "unfit for duty", both the Village and the doctors who had conducted the fitness for duty evaluations refused to tender same nor to explain the nature of the perceived disability which prohibited Brown from returning to work.

24. On May 17, 2017 Brown filed his initial charge alleging discrimination on the basis of disability. (Exhibit 1 hereto.)

25. Ultimately, Brown was discharged from his employment purportedly based on the January 2017 Notice after a June 2017 hearing. Again, no explanation was given to Brown as to what perceived disability made him unable to perform the regular duties of his job.

26. Brown had significant difficulty obtaining employment after his termination, and relocated out of state briefly in an attempt to find comparable employment.

27. On November 6, 2017 Brown amended his initial charge of discrimination to include a retaliation charge after he learned that the Village was interfering with his efforts to obtain and maintain employment. (Exhibit 2 hereto.)[1]

28. The Village failed to comply with the most basis tenant of the ADA by forcing an officer to undergo over a year of evaluations with no basis.

29. The Village failed to accommodation Brown based upon its perception that Brown had a mental disability preventing him from performing his job.

30. Brown was never provided an opportunity to engage in an interactive process or avail himself of other protections available to him under the ADA. Rather, he was simply told without explanation that he was unfit for duty.

31. The Village retaliated against Brown in violation of the Act for exercising his rights under the Act by defaming him to potential employers.

## COUNT I
### Violation of the Americans with Disabilities Act
### Interference/Failure to Accommodate

---

[1] Brown's Dismissal and Notice of Rights is attached hereto as Exhibit 3.

32. Plaintiff adopts herein by reference the above paragraphs above as though fully stated herein.

33. At all times herein the ADA, 42 U.S.C.A. § 12101 *et seq*. was in full force and effect.

34. At all times herein, Title I of the ADA covered public and private employment.

35. At all times herein, Plaintiff was employed by the Village of Markham, an "employer" within the meaning of the ADA.

36. At all times relevant herein Brown, after February 5, 2016, was and is a "qualified person with a disability" within the meaning of the ADA.

37. Defendant perceived that Brown had a disability based upon the requirement that Brown complete a fitness for duty test.

38. Brown was able to perform the essential functions of his job without a reasonable accommodation.

39. Defendant discriminated against Brown on the basis of his disability by:

    a. Requiring repeated fitness for duty evaluations without a reasonable basis; and

    b. keeping Brown on unpaid leave for nearly 18 months without considering any reasonable accommodation; and

    c. failing to engage in an interactive process with Brown to explore an appropriate reasonable accommodation; and

    d. failing to consider whether there would be an alternative reasonable accommodation that would not pose an undue hardship; and

    e. terminating Brown because of an alleged disability.

40. Brown attempted to seek reasonable accommodation and engage in an interactive process by complying with Markham's requests that he undergo fitness for duty evaluations and undergo mental health counseling.

41. Brown attempted to seek reasonable accommodation and engage in an interactive process by providing a release for return to work in July of 2016.

42. Brown attempted to seek reasonable accommodation and engage in an interactive process by requesting the ability to seek a medical opinion from a doctor of his choice.

43. Brown attempted to seek reasonable accommodation and engage in an interactive process by requesting his medical records so that he could see for his own eyes what disability the Village and their doctors suggested made him unfit.

44. Brown attempted to seek reasonable accommodation engage in an interactive process by retaining counsel to negotiate both the release of his records and his ability to seek his own medical opinion.

45. The above accommodations were all ones which did not create a significant risk to the health or safety of the Defendant's other employees or the public.

46. The above accommodations were all ones which were reasonable and did not constitute an undue hardship to the Village.

47. As a result of the Defendant's unlawful discriminatory actions, Plaintiff has sustained severe and substantial damages and injuries including, but not limited to, lost earnings, reduction in the value of his pension, lost health and dental insurance benefits and emotional distress, including significant damage to his professional reputation.

## COUNT II
### Violation of the Americans with Disabilities Act

### Retaliation

48. Plaintiff adopts herein by reference the above paragraphs above as though fully stated herein.

49. At all times herein the ADA, 42 U.S.C.A. § 12101 *et seq.* was in full force and effect.

50. At all times herein, Title I of the ADA covered public and private employment.

51. At all times herein, Brown was entitled to the protections of the ADA and exercised his rights under the ADA by filing a Charge of Discrimination (Exhibit 1) as described herein.

52. Defendant retaliated against Brown on the basis of his disability by defaming him to potential and actual employers.

53. As a result of the Defendant's unlawful discriminatory and retaliatory actions, Plaintiff has sustained severe and substantial damages and injuries including, but not limited to, lost earnings, reduction in the value of his pension, lost health and dental insurance benefits and emotional distress, including significant damage to his professional reputation.

WHEREFORE, for all the foregoing reasons, Plaintiff herein prays for judgment in his favor and against the Defendant herein as outlined within the ADA including:

    A. That the Plaintiff be awarded back pay, front pay and lost wages;

    B. That the Plaintiff be awarded compensatory damages for emotional distress;

    C. That the Plaintiff be awarded attorneys' fees and costs;

D. That the Plaintiff be compensated for any medical and dental expenses he has incurred since his termination;

E. That the Plaintiff be compensated for the reduced value of his pension;

F. That the Plaintiff be awarded punitive damages for the intentional and wrongful acts of the Defendant; and

G. That the Plaintiff be awarded such other relief as this Court may deem just and proper.

Plaintiff demands trial by jury.

Respectfully submitted,

/s/ Tracy E. Stevenson
Tracy E. Stevenson, ARDC No. 6207780
Law Offices of Tracy E. Stevenson, P.C.
1400 N. LaSalle, Suite 3N
Chicago, IL 60610
312-882-1227
Tracy@tracystevensonlaw.com

/s/ Lisa L. Clay
Lisa L. Clay, Attorney at Law
345 North Canal Street, Suite C202
Chicago, Illinois 60606
312.753.5302
lclayaal@gmail.com
ARDC # 6277257